**Hearing Date and Time: October 15, 2014 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: October  7, 2014 at 5:00 p.m. (Eastern Time)**

Douglas E. Spelfogel
Richard J. Bernard
Katherine R. Catanese
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016-1314
Telephone: 212-682-7474
Facsimile: 212-687-2329

*Attorneys for Official Committee of Unsecured Creditors*
*of Stillwater Asset Backed Offshore Fund, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| STILLWATER ASSET BACKED OFFSHORE FUND LTD., | Case No. 12-14140 -(ALG)- |
| Debtor. | |

----------------------------------------------------------x

**SECOND INTERIM AND FINAL APPLICATION OF FOLEY & LARDNER LLP, COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

| | |
|---|---|
| Name of Applicant: | Foley & Lardner LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention Order: | June 12, 2013, *nunc pro tunc* April 2, 2013 |
| Period for Which Compensation and Reimbursement is Sought: | April 1, 2014 through August 14, 2014 |
| Total Amount of Fees and Expenses Requested for Payment (after $35,000 voluntary reduction): | $697,289.51 |
| | comprised of $486,493.50 Asset Analysis and Recovery and  $202,002.50 general matters |

| | |
|---|---|
| Amount of Compensation Sought as Actual, Reasonable and Necessary (after $35,000 voluntary reduction): | $688,496.00<br>-$35,000<br>$653,496 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $43,793.51 |
| Aggregate Amounts Paid to Date for fees during Compensation Period: | $0.00 |
| This is a(n) ____ Interim _X_ Final Application | |
| Amounts Awarded in Previous Applications: | $482,771.68 in fees and $1,821.70 includes voluntary deductions of $43,266.32 |

Foley & Lardner LLP (the "Applicant"), as counsel to the Official Committee of Unsecured Creditors (the "Committee") of Stillwater Asset Backed Offshore Fund, Ltd., (the "Debtor") in the above-captioned case respectfully represents:

### Introduction

1.      This is the Applicant's second interim and final application (the "Application") for allowance and payment of compensation for professional services and reimbursement of expenses pursuant to sections 330, 331 and 1103 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 2016-1 of the Local Rules of the United States Bankruptcy Court of the Southern District of New York (the "Local Rules"), the Court's Administrative Order M-389 (the "Administrative Order"), the United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and together with the Administrative Order, Local Rules, Bankruptcy Rules, and Bankruptcy Code, the "Applicable Guidelines and Orders").

2

2.      This Application requests interim and final allowance of compensation for professional services (the "Services") rendered by the Applicant on behalf of the Committee during the period of April 1, 2014 through August 14, 2014 (the "Compensation Period") and reimbursement of actual and necessary expenses incurred by the Applicant during the Compensation Period in connection with the rendering of such Services and final allowance of compensation and reimbursement of expenses incurred from April 2, 2013 through March 31, 2014 and awarded pursuit the order granting first interim application of professionals [ECF 166] (the "First Interim Order"). This Application substantially complies with the Applicable Guidelines and Orders as stated in the certification attached hereto, made on behalf of the Applicant by Douglas E. Spelfogel (the "Certification").

3.      This Application seeks interim and final allowance of compensation in the amount of $653,496.00, representing the fees for the Applicant's actual time charges for 1,373.20 hours of professional services rendered during the Compensation Period for professional services in the amount of $688,496.00, less a voluntary reduction of $35,000.00, plus reimbursement of actual and necessary expenses incurred in the amount of $43,793.51, for a total of $697,289.51, as more fully set forth below. The Applicant submits that approval and allowance of these amounts is fully warranted given the actual and necessary services rendered to the Committee by the Applicant as described in this Application and the Applicant's first interim application [ECF 166] (the "First Interim Application").

## **Jurisdiction**

4.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Background**

5.      The Debtor is one of multiple affiliated asset-backed investment funds (the "Stillwater Funds") formed for the purpose of investing in various types of loans.  Many of the Stillwater Funds' investments became illiquid at the end of 2008 and in 2009 allegedly as a result of the financial crisis, the drying up of lending facilities, and the collapse of the real estate and other markets.

6.      Stillwater Capital Partners, LLC, the general partner of the Stillwater Funds responsible for their day-to-day operation and administration, and Stillwater Capital Partners, Inc., the Stillwater Funds' investment manager, sought and identified Gerova as an entity which could purportedly provide the Stillwater Funds' with liquidity.   In January of 2010, they accordingly caused the Stillwater Funds' assets to be transferred to Gerova as part of a so-called combined merger and asset sale (the "Gerova Transaction").   The Stillwater Funds' real estate assets were then further transferred to a related entity, Net Five Holdings LLC.  As provided in the Court's memorandum decision granting the petition in bankruptcy, the Gerova transfer was a "fiasco."

7.      The Debtor's creditors, who were redeemed investors in the Stillwater Funds, never received their redemption and certain of these creditors pursued lawsuits against the Stillwater Funds.

8.      Given the foregoing and because the creditors lacked transparency over the Stillwater Funds' assets after the transfers to Gerova, the concern that the assets were transferred without fair consideration and/or were dissipating, on October 3, 2012 (the "Petition Date"), certain creditors (the "Petitioning Creditors") filed an involuntary bankruptcy petition (the

"Petition") under chapter 11 of the Bankruptcy Code against the Debtor (the "Chapter 11 Case").

On January 31, 2013, the Court entered an Order for Relief approving the Petition [Dkt. No. 37].

9.      On March 21, 2013, the Office of the United States Trustee appointed the

Committee.  On April 2, 2013, the Committee selected Foley as its counsel to represent the

Committee in all matters during the pendency of the Chapter 11 Case.  On or about April 4,

2013, the Court, with the consent of the Committee,  approved the appointment of Evan Blum as

Chief Restructuring Officer ("CRO").

10.     On May 24, 2013, the Committee filed the Application for Order Authorizing the

Debtors to Retain Foley & Lardner LLP as counsel to the Official Committee of Unsecured

Creditors of Stillwater Asset Backed Offshore Fund, Ltd. (the "Retention Application").

11.     On June 12, 2013, the Court entered an order approving the Retention Application

on a final basis, effective as of April 2, 2013 (the "Retention Order", attached hereto as Exhibit

F).

12.     As of the filing of this Application, the Applicant has not received any amounts

sought for Services performed or reimbursement for necessary and actual expenses incurred

during the Compensation Period.  The Court previously awarded, on an interim basis, payment

of $482,771.68 in fees and $1,821.70 in expenses after voluntary reductions of $43,266.32

during the first interim compensation period from April 2, 2013 through March 31, 2014. [1]

13.     No agreement or understanding exists between the Applicant and any other

person for the sharing of compensation received from services rendered or in connection with the

Chapter 11 Case, nor shall the Applicant share or agree to share the compensation paid or

allowed from Debtor's estate for such services.

---

[1] Applicant was also awarded $350,000 for administrative expenses for services provided to the petitioning
creditors prior to the appointment of the Official Committee of Unsecured Creditors.

### Summary of Case Status

14.     Applicant expended considerable resources and took the lead role in the instant case during the Compensation Period on behalf of the Committee, in bringing the global settlement agreement (the "GSA") and the Stillwater agreement (the "Stillwater Agreement"), to fruition and in preparing recovery claims in contemplation of the effective date, including, but not limited to, in connection with the investigation of alleged improper and/or preferential transfers of the assets of the Debtor to Net Five, related parties and other third parties. The GSA was in settlement (the "Settlement") of multiple legal actions, complex litigation claims and assets beneficially owned by the Debtor and non-debtor related investment funds, which agreement was approved by the Bankruptcy Court by final order and was approved by the U.S. District Court overseeing related pending Class Action litigations, which was approved on June 9, 2014.  The GSA went effective as of July 11, 2014. The GSA provides a source of significant recovery for the Debtor's estate from the return of the Debtor's former assets, assets of other, related funds, third party causes of action, and directors' and officers' insurance policy proceeds as discussed further below.

15.     The initial recoveries to the Debtor's estate covered incurred estate administrative expenses and a reserve for future administrative expenses[2] and, more importantly, funding nearly $2.5 million of cash for distribution to the Debtor's creditors[3] plus potential additional recoveries from future tangible and intangible assets that the Debtor's creditors receive an interest in under the GSA discussed below. The resulting pot of assets created through the GSA has been

---

[2] The reserve will be used to fund additional administrative expense claims incurred from September 30, 2013 until the Effective Date (defined below in paragraph 29(e)), as well as for payment of fees incurred by the Structure (defined below in paragraph 29(k)) after the Effective Date in pursuing litigation against third parties and recovery of the assets.

[3] Including funds paid to petitioning creditors from the Stillwater D&O policy as detailed more fully in the FRBP 9019 Motion to Approve Global Settlement filed in this case.

estimated by the CRO to have a value of between $20 million to $40 million dollars, of which the within general unsecured creditors are entitled to receive approximately 40% of the net recoveries.  In addition, according to the Disclosure Statement, the CRO has estimated that distributions to general unsecured creditors will approximate between 16.5%-40% on account of the nearly $46 million in general unsecured claims on file in the case or between approximately $7.5 million and over $18.5 million, from what was essentially a no-asset (other than ligation claims) estate upon the commencement of the instant bankruptcy case.  In addition, it should be noted, under the terms of the GSA (defined below), fees accrued hereunder, subject to court approvals, are payable from gross assets recovered pursuant to the GSA, the net effect of which is that only approximately $278,916.00  (or 40%) of the requested fees sought are payable from property available for distributions to the Debtor's general unsecured creditors.

16.    The Debtor and Committee's joint plan of liquidation (the "Plan"), which provides the additional logistics for carrying out the monetization and distributions to the Debtor's creditors of their share of the proceeds from the GSA, was unanimously approved and confirmed on August 12, 2014. The Plan went effective on August 14, 2014. It is anticipated that initial distributions under the Plan and GSA will be paid in later September 2014.

**Summary of Services Rendered by Foley & Lardner LLP During the Compensation Period**

17.    During the Compensation Period, the Applicant provided services under a number of different projects falling under the project categories of 1) Asset Analysis and Recovery, 2) Case Administration, 3) Meeting and Communication with Creditors, 4) Fee/Employment Applications, 5) Asset Disposition, 6) Relief from Stay/Adequate Protection,  7) Business Operations, 8) Tax Issues, 9) Claims Administration and Objections, 10) Plan and Disclosure Statement, and 11) Court Approvals/Conclusion of Case.

7

18.    Attached hereto as <u>Exhibit A</u> is a schedule specifying, by timekeeper category, blended hourly rates, and amounts billed in this Application.

19.    The attached <u>Exhibit B</u> sets forth the names, titles, and hourly rates of, and the number of hours billed by the professionals.  The hourly rates for professional services charged by the professionals of the Applicant for each type of work and are consistent with rates typically charged by other comparable firms for this type of work.

20.    In this Chapter 11 Case, a budget has not been established and therefore <u>Exhibit C</u> is not attached.

21.    Attached hereto as <u>Exhibit D</u> is a schedule specifying, by project category, the amount of fees and expenses for which the Applicant seeks allowance by this Application.

22.    The Applicant's professionals have maintained contemporaneous time records which indicate the time that each professional spent working on a particular matter and the nature of the work performed.  Copies of these time records are annexed to this Application as <u>Exhibit D-1</u>.

23.    Attached hereto as <u>Exhibit D-2</u> are records of the expenses for which Applicant is seeking reimbursement.

24.    Below is a summary of the work performed by project category.  All numbers listed are before the voluntary reduction.

     a.    <u>**Asset Analysis and Recovery  ($486,493.50)([B120]**</u>
        i.    *Fees Incurred Related to Investigation of Net Five* [$404,550.50]

25.    During this Compensation Period, Applicant expended significant efforts in the review and analysis of potential recovery actions that the estate received an interest in as a result of the GSA.  The within services included discovery and preparation of an adversary complaint related to the alleged fraudulent transfer of Stillwater's real estate assets to Net Five and other

8

third parties, together with related improper conduct, that is believed to represent one of the estate's most valuable litigation claims, given that the real estate at issue was transferred without consideration and had been valued into the multi-millions of dollars prior to the time of the transfers. In this regard, given concerns over further dissipation of the assets at issue and the potential expiration of certain statute of limitations, Applicant undertook significant diligence and investigatory work pre-confirmation, including, but not limited to formal and informal discovery and drafting a complaint against Net Five and other third parties seeking to recover the property and/or proceeds improperly transferred. In this regard, Applicant's services included FRBP 2004 discovery and motion practice. Applicant prepared several FRBP 2004 motions, and took 7 depositions across the country, held numerous witness interviews, subpoenaed documents and reviewed thousands of documents. Applicant also researched various issues related to conflicts of law, statute of limitations and fraudulent transfers, and prepared research memorandums outlining its findings.

26.    Because of the complicated structure wherein real estate was typically held through single purpose vehicles, together, with the multiple transfers involved, tracing the transfers and movement of funds was particularly difficult. Applicant also reviewed numerous real property documents and title reports as well as coordinated with CSI, the investigator to the estate, in an effort to better understand the movement and disposition of the real property, where in certain cases, transfers were effectuated with notice of fraudulent conduct and the class action suits and/or in violation of an injunction issued by the District Court. Further, Applicant prepared a complaint against Net Five and other third parties related to the diversion of real estate assets which is expected to be filed in the near term, and conferred with the Class Action

counsel, whose constituency will jointly benefit from any recoveries, together with the creditors hereunder, as well as the CRO and the Committee.

ii.    *Fees Incurred Related to Investigation and Recovery of Other Assets* [$81,943]

27.    Finally, Applicant also investigated other potential assets including alleged converted escrow money, money held by an SEC receiver relating to Net Five, potential claims against Partner Re, an asserted secured lender that received millions of dollars in assets from certain Stillwater entities under what are believed to be questionable terms/circumstances, to determine if there were additional viable assets and claims for recovery actions.  It is anticipated claims and causes of action relating to the foregoing will be commenced in the near term.

b.    **Case Administration ($11,106.50) [B110]**

28.    During the Compensation Period, Applicant engaged in administrative tasks to assist in the recovery of assets.  Applicant prepared for depositions and organized deposition exhibits and binders for the depositions related to Net Five.  Applicant also organized and loaded discovery documents into its Relativity database to make them searchable.  Applicant also prepared subpoenas for service on certain parties related to the Net Five investigation.

c.    **Meeting and Communication with Creditors  ($8,674.00) [B150]**

29.    Applicant periodically communicated with the creditors on the Committee through conference calls and emails, including detailed discussions regarding litigation claims, the valuation of the Debtor's assets, and proposed distributions. Applicant also prepared resolutions and prepared analysis for the Committee regarding various issues that arose in the case.

g.    **Fee/Employment Applications ($31,999.00) [B160]**

30.    During the Compensation Period, Applicant performed services relating to preparation of the first interim fee application, attended the hearing on the interim fee

application, and reviewed documents in connection with preparation of this fee application and applicable exhibits.

31.    Applicant reviewed correspondence from the U.S. Trustee related to its informal objection to the interim fee application and negotiated a resolution to same.

### h.    Asset Disposition ($24,733.00) [B130]

32.    Applicant reviewed documents regarding the status, return of, and potential monetization of millions of dollars in fund of funds assets, which were recovered as part of the GSA, and reviewed documents regarding the sale of certain Carrington notes (one of the fund-of-fund assets that was improperly sold during the pre-effective date period), and negotiated a settlement regarding the same.  Applicant also monitored and responded to issues regarding the maintenance of the assets to be turned over as part of the GSA, which under the terms of the GSA, were controlled by prior management pre-effective date, under supervision of the CRO and Committee.

### i.    Relief from Stay – Adequate Protection ($7,550.00) [B140]

33.    Applicant worked on issues relating to review and response to a certain motion for stay relief by the D&O carrier relating to requests to make payments to prior management's professionals from the D&O proceeds, prepared and filed a limited objection to the lift stay motion, and undertook services including negotiations and resolution of these issues in conjunction with the resolution of the sale of the Carrington notes and payment of certain D&O insurance monies relating to the GSA.  The within included discussions with the purchaser of the Carrington notes, as well as counsel for prior management, insurance carrier, and CRO.

### l.    Business Operations ($7,085.00) [B210]

11

34.    Applicant prepared documents and performed follow up services regarding and to facilitate the GSA going effective, distributions to be made consistent with the GSA terms, and transfer of certain documents and assets as required pursuant to the GSA.   Applicant also monitored monthly reporting and accounting.

**m.    Tax Issues ($32,961.00) [B240]**

35.    Applicant assisted in the drafting of the LLC Agreement for Stillwater Liquidation LLC, (the "Liquidating LLC"), the new entity created as part of the GSA to hold the assets and claims transferred as part of the Settlement, addressed various tax implications and issues effecting the structure, and reviewed and revised the LLC agreement, which provided the specific mechanics for implementation of the GSA and Plan.   Further, Applicant attended conference calls regarding the LLC Agreement  to negotiate its terms, and conferred with the Committee.

**n.    Claims Administration and Objections ($1,742.00) [B310]**

36.    Applicant reviewed and revised the plan of allocation which described the claims to be paid, insured proper treatment of creditors, and undertook follow up services to address compliance with the GSA.

**o.    Plan and Disclosure Statement ($73,722.00) [B320]**

37.    Applicant undertook services regarding assisting with the drafting of the plan and disclosure statement, revising same to conform with the GSA, undertook services to insure integration of the Plan, GSA, and LLC Agreement, including, relating to formulation of the mechanics for the post effective date structure which controlled the assets and claims recovered under the GSA, as well as distributions, and which served as the underpinning for the Plan. Applicant also worked with the Committee, CRO, and other parties-in-interest, and their professionals regarding the formation of the Plan, conducted legal research regarding the same, including, but not limited, to with respect to the appointment of and rights of the plan

12

administrator to oversee the estate's 40% interest in the Liquidating LLC,  and assisted in and

negotiated the final joint Plan and Disclosure Statement, together with exhibits.

38.    Applicant reviewed and revised the motion and brief in support of confirmation.

Applicant also prepared the ballot and a joint direction letter for release of escrow funds.

Finally, Applicant prepared for and attended the confirmation hearing on the Plan and assisted in

preparing the order confirming the Plan.

**q.    Bankruptcy Court Approvals ($2,430.00) [B440]**

39.    Applicant monitored the class action approvals of the GSA, which was a

condition to the GSA going effective, including reviewing a response filed to the same, together

with follow up work in support of approvals.

**The Requested Compensation Should Be Allowed**

40.    Section 330 of the Bankruptcy Code provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered  . . .  and reimbursement for actual, necessary expenses."  11

U.S.C.  § 330(a)(1).   Section 330(a)(3) further provides that in determining the amount of

reasonable compensation to be awarded:

> [T]he court shall consider the nature and extent, and the value of such services,
> taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the completion of,
> a case under this title;
>
> (D) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other than
> cases under this title; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

41.    In light of the foregoing, Applicant respectfully submits that the services for which compensation is sought were necessary and beneficial to the estate and that the compensation sought is reasonable in light of the nature, extent and value of such services, and should thus be approved.  Applicant's efforts in this case during the Compensation Period resulted in the occurrence of the effective date of the GSA, confirmation of a unanimous Plan, and the effective date of the Plan.  As discussed above, the resulting pot of assets created through the GSA has been estimated to have a value of between $20 million to $40 million dollars, of which the within general unsecured creditors are entitled to receive 40% of the net recoveries (after payment of costs).  In addition, according to the Disclosure Statement, the CRO has estimated that distributions to general unsecured creditors will approximate between 16.5%-40% on account of the nearly $46 million in general unsecured claims on file in the case or between over $7.5 million and $18.5 million, from what was essentially a no-asset (other than ligation claims) estate upon the commencement of the instant bankruptcy case.  Applicant's efforts during the Compensation Period also will result in an initial distribution to the Debtor's creditors as detailed above, or approximate $2.5 million,[4] which are expected in latter September 2014.

Additionally, section 328(a) of the Bankruptcy Code provides that a court may authorize the retention of a professional under section 327 of the Bankruptcy Code "on any reasonable terms and conditions of employment, including . . .  on an hourly basis."  11 U.S.C. § 328(a). The Retention Order authorized the Applicant's retention with respect to its services and

---

[4] Including funds paid to petitioning creditors from the Stillwater D&O policy as detailed more fully in the FRBP 9019 Motion to Approve Global Settlement filed in this case.

14

reimbursement for any related expenses.  Therefore, the Court should award the Applicant all compensation sought in this Application.

### Notice and Prior Applications

42.    A complete copy of this Application, with exhibits, has been filed with the Court. Notice of this Application has been given to the Debtor, Office of the United States Trustee, the Members of the Creditors' Committee, and all parties that have filed a notice of appearance in this case.  In light of the nature of the relief requested herein, the Applicant submits that no other or further notice need be provided.

43.    It should also be noted, upon the effective date of the GSA on July 11, 2014, and as provided for under the GSA, Applicant was separately engaged by the Liquidation LLC and Oversight Committee established thereunder.  Pursuant to such engagements, Applicant has billed time for certain legal services to the LLC and Oversight Committee from July 11, 2014 to August 14, 2014, in the amount of $74,823.50 in fees and $1.70 in expenses relating to services to the Liquidation LLC and $21,217.00 in fees and $0 in expenses relating to services to the Oversight Committee.  In accordance with the GSA, these fees are payable pursuant to the approved protocol thereunder, and are not included within this Application, subject to the joint oversight by the instant creditors and Class Action creditors as described more fully under the GSA.

44.    Lastly, Applicant has incurred approximately $16,440.06 in fees and $11.06 in expenses since the effective date of the Plan.  As provided for under the Plan, these services will be submitted for review and approvals pursuant to the post-effective date requirements under the confirmed Plan and relate primarily related to final approval of fees.

45.    No prior application for the relief sought herein   for compensation during the Compensation Period has been made to this or any other Court.

46.    Based upon the foregoing, and for all of the reasons detailed above and based upon the record of the within case, it is respectfully submitted that the services rendered were necessary and beneficial to creditors of the estate.

### Conclusion

WHEREFORE, Foley & Lardner LLP respectfully requests that this Court enter an order (i) approving and allowing on an interim and final basis compensation of fees for professional services rendered for the Committee during the Compensation Period in the amount of $732,289.51, representing $688,496.00 in fees, less a voluntary reduction in the amount of $35,000.00, and reimbursement for actual and necessary expenses incurred during the Compensation Period in the amount of $43,793.51, for a total of **$697,289.51**; (ii) authorizing and directing the Debtor and Liquidating LLC to pay the Applicant all fees and expenses for the Compensation Period that remain outstanding as of the date of such an order and as provided for under the GSA; (iii) approving and allowing on a final basis compensation and reimbursement of expenses in the amounts of $482,771.68 and $1,831.70, respectively, as approved and awarded in the First Interim Order, and (iv) granting such other and further relief as this Court deems just and equitable under the circumstances.

Dated: New York, New York                          Respectfully submitted,
           September 15, 2014

                                                              _/s/ Douglas E. Spelfogel___
                                                              Douglas E. Spelfogel
                                                              Richard J. Bernard
                                                              Katherine R. Catanese
                                                              FOLEY & LARDNER LLP
                                                              90 Park Avenue
                                                              New York, NY 10016-1314
                                                              Telephone: 212-682-7474
                                                              Facsimile: 212-687-2329

*Attorneys for Official Committee of
Unsecured Creditors of Stillwater Asset
Backed Offshore Fund, Ltd.*

**Certification**

4844-1254-4029.5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re                                                          Chapter 11

STILLWATER ASSET BACKED                                        Case No. 12-14140 (ALG)
OFFSHORE FUND LTD.,

               Debtor.

--------------------------------------------------------x

## CERTIFICATION OF DOUGLAS E. SPELFOGEL

Douglas E. Spelfogel declares and states as follows:

1.      I am a partner at the firm of Foley & Lardner LLP (the "<u>Applicant</u>") and an

attorney duly admitted to practice law in the State of New York and the United States District

Court for the Southern District of New York.  Applicant has been retained as counsel for Official

Committee of Unsecured Creditors of Stillwater Asset Backed Offshore Fund, Ltd. (the

"Committee") in the above-captioned chapter 11 case.

2.      I make this certification with respect to the foregoing interim and final application

(the "<u>Application</u>") for allowance and payment of compensation for professional services and

reimbursement of expenses for the period beginning April 1, 2014 through August 14, 2014 (the

"<u>Compensation Period</u>") by the Applicant.

3.      I am the professional designated by the Applicant with respect to compliance with

the Administrative Order M-389, the Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases, dated November 25, 2009

(the "<u>Local Guidelines</u>") and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on

January 30, 1996 (the "UST Guidelines," and together with the Local Guidelines, the "Guidelines").

4.      I have personally performed services rendered by the Applicant during the Compensation Period and am thoroughly familiar with all other work performed on behalf of the Committee by the professionals in the firm.

5.      In compliance with section A of the Local Guidelines, I certify that:

a.      I have read the Application.

b.      To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Guidelines.

c.      Except to the extent that fees or disbursements are prohibited by the Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by the Applicant and generally accepted by the Applicant's clients.

d.      In providing a reimbursable service in this chapter 11 case, the Applicant does not make a profit on that service, whether the service is performed by the Applicant in-house or through a third-party.

e.      In respect of Section A.2 of the Local Guidelines, upon the entry of the order authorizing the retention of the Applicant on June 12, 2013, I note that the Applicant has not provided monthly billing statements of the Applicant's fees and disbursements accrued during the Compensation Period because no interim compensation order providing for monthly billing statements was entered in this case.  The Applicant,

however, provided to the Committee, on a monthly basis, its draft invoices to keep its client apprised of fees and expenses.

       f.      In respect of section A.3 of the Local Guidelines, I note that a copy of this Application is being provided to the United States Trustee.

6.      In accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and section 11 U.S.C. § 504, no agreement or understanding exists between the Applicant and any other person for the sharing of compensation to be received in connection with this chapter 11 case.

7.      By this certification, the Applicant does not waive or release any rights or entitlements it has under the order of this Court, entered  June 12, 2013, approving the Applicant's retention by the Committee effective as of April 2, 2013.

I declare under penalty of perjury that the foregoing is true and correct.

Executed, this 15th day of September, 2014 at New York, New York.

                      By:     */s/ Douglas E. Spelfogel*
                                 Douglas E. Spelfogel

Douglas E. Spelfogel
Richard J. Bernard
Katherine R. Catanese
**FOLEY & LARDNER LLP**
90 Park Avenue
New York, NY 10016-1314
Telephone: 212-682-7474
Facsimile: 212-687-2329

*Attorneys for Official Committee of Unsecured Creditors*
*of Stillwater Asset Backed Offshore Fund, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                                                          Chapter 11

STILLWATER ASSET BACKED                     Case No. 12-14140 -(ALG)
OFFSHORE FUND LTD.,

         Debtor.

---------------------------------------------------------x

**EXHIBIT LIST TO SECOND INTERIM AND FINAL APPLICATION OF
FOLEY & LARDNER LLP, COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, FOR ALLOWANCE AND PAYMENT OF
COMPENSATION FOR PROFESSIONAL SERVICES AND
<u>REIMBURSEMENTOF ACTUAL AND NECESSARY EXPENSES</u>**

<u>**Exhibit A**</u>  Compensation Disclosures

<u>**Exhibit B**</u>  Summary of Timekeepers

<u>**Exhibit C**</u>  Blank/Not applicable.

<u>**Exhibit D**</u>  Summary of Compensation by Project Category and Expenses

<u>**Exhibit D-1**</u>  Detail of Time Billed

<u>**Exhibit D-2**</u>  Detail of Expenses Billed

<u>**Exhibit E**</u>  Summary Cover Sheet of Fee Application

<u>**Exhibit F**</u>  F&L Order Approving Employment